UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                              Case Number 08-20520

v.                                             Honorable David M. Lawson

DAVID LEE WILLIAMS,

                    Defendant.

_____/

## ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE

Defendant David Williams has filed a motion and supplemental motion asking the Court to "resentence him to early release" under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Williams has served about 103 months of a 240-month prison sentence for multiple drug and firearm charges. He argues that a sentence reduction is justified by his medical conditions (obesity, hypertension and diabetes) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The government opposes any sentence reduction, contending that consideration of the factors in 18 U.S.C. § 3553(a) do not favor release. Because Williams has not demonstrated that immediate release is appropriate under the balancing of factors in section 3553(a) or that he qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

Williams pleaded guilty to multiple drug and gun charges: conspiracy to possess with intent to distribute five kilograms or more of cocaine; conspiracy to possess with intent to distribute 50 grams or more of crack cocaine; possession with intent to distribute 50 grams or more of crack; possessing a firearm after having been convicted of a felony; and conspiring to use communication

facilities to commit a drug trafficking crime.  On June 25, 2009, he was sentenced to 240 months in prison (240 months on each drug count, 120 months on the gun count, and 48 months on the telecom count, all to run concurrently).  He has served approximately 104 months or around 43% of his sentence, and he presently is confined by the Bureau of Prisons at FCI Milan, a low security facility in Milan, Michigan, that houses around 1,260 inmates.  Public records of the BOP indicate that, with allowance for his nearly 600 days of presently accumulated "good time" credit, Williams is scheduled to be released from prison on August 17, 2026.  He is 50 years old.

On November 14, 2020, Williams filed through counsel a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, and he later filed a supplemental motion pursuing the same relief.  In his motion, Williams argued that he is qualified for release because of his severe obesity, hypertension, and diabetes.  The government opposes the motions on the merits.

The most recent data disclosed by the BOP indicates that there are 30 active coronavirus cases among inmates and 4 among staff at the Milan facility.  Also, 231 inmates and 75 staff previously were infected and now have recovered.  Reports indicate that three inmates have died. *See* https://www.bop.gov/coronavirus/.

## II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'"  *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).  "But that rule comes with a few exceptions, one of which permits compassionate release."  *Ibid.*  "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).  Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt

of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting

18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors

set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and

compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has

'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. §

3582(c)(1)(A)(i), (ii)).  Williams relies on subparagraph (i) of the statute.  Under that provision,

the Court can order a reduction of a sentence, even to time served, by following a procedure that

the court of appeals has distilled into three steps.  *First*, consider whether "extraordinary and

compelling reasons warrant such a reduction."  *Second*, determine if the "reduction is consistent

with applicable policy statements issued by the Sentencing Commission."  *Third*, "consider[] the

factors set forth in section 3553(a) to the extent that they are applicable."  *United States v. Ruffin*,

978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found

in U.S.S.G. § 1B1.13, which simply recites the statute.  The commentary adds gloss, which does

not have the force of law.  *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration*

*denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent

legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").  That

has led the court of appeals in its evolving guidance on the subject to hold that district courts should

dispense with step two when the motion for compassionate release comes from a prisoner and not

the BOP.  *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority

of district courts and the Second Circuit in holding that the passage of the First Step Act rendered

§ 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further.  In *United States v. Elias*, --- F.3d ---, No. 20-3654, 2021 WL 50169 (6th Cir. Jan. 6, 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 2021 WL 50169 at *1 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)).  It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at *2.  It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

## A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

## B.

Addressing the first element — extraordinary and compelling reasons — Williams argues that his medical conditions expose him to elevated risk of complications from the highly-contagious novel coronavirus.  In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-

- 4 -

19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6.

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  The defendant's age (50) does not put him in a high-risk category, but he correctly points out that other pertinent recognized risk factors include obesity (Body Mass Index greater than 30) and diabetes.

Medical records reveal the defendant's height as 5'11" and, at an August 2020 examination, he weighed 304 pounds.  Those figures result in a calculated BMI of 42.3, well beyond the obesity threshold of 30, which the government concedes is a recognized serious medical risk factor.  *See* Medical Notes dated August 26, 2020, ECF No. 99-1, PageID.447.  The limited medical records that were submitted only vaguely indicate a "risk" of diabetes, but the government represents that the defendant has been diagnosed with Type 2 diabetes mellitus, and it acknowledges that medical indications of obesity and Type 2 diabetes have been found to constitute a sufficient showing of extraordinary medical risk under the first element of the *Jones* framework.  *United States v. Hall*, No. 18-00179, 2020 WL 5077085, at *3 (E.D. Tenn. Aug. 27, 2020) ("Hall's medical records only confirm he has Type 2 diabetes mellitus and hypertension. Of these two conditions, the Centers for Disease Control and Prevention (CDC) recognizes that only

Hall's diabetes renders him at an 'increased risk for severe illness from COVID-19.' The United States concedes that 'Hall has thus shown an extraordinary and compelling reason for release.'").

The medical notes do not indicate any diagnosis of hypertension, nor is there any indication of the precise type of condition, or any medication regimen prescribed to control it. The CDC states that individuals with hypertension "*might* be at an increased risk for severe illness from COVID-19." CDC Risk Factors, *supra* (emphasis added). Drilling down, though, that condition is grouped with "serious heart conditions" that predispose a person to higher risks of complications. Also included are "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension." *Ibid.* Although the CDC recognizes "pulmonary hypertension" as a serious heart condition that may put people at a higher risk of severe COVID-19-related complications, federal courts have held that essential or systemic hypertension, in contrast with a more serious specific diagnosis of pulmonary hypertension, does not constitute a recognized serious risk factor for complications from a coronavirus infection. *E.g.*, *United States v. Allen*, No. 15-00139, 2020 WL 5573820, at *5 (M.D. Tenn. Sept. 17, 2020) ("Defendant's diagnosis of high blood pressure, which Defendant's medical records do not indicate is a specific, or otherwise serious form of high blood pressure, does not constitute an extraordinary and compelling reason for compassionate release. This is especially true because Defendant does not allege that the BOP facility in which he is incarcerated is not adequately managing his condition, and Defendant's medical records indicate that his condition is in fact being managed with medication while he is incarcerated.") (collecting cases); *see also Hall*, No. 18-00179, 2020 WL 5077085, at *3. There is no indication in the available records that the defendant suffers from the particular form of hypertension that constitutes a recognized medical risk factor.

Nevertheless, as noted above, the government concedes that the defendant's significant obesity and Type 2 diabetes diagnosis constitute recognized extraordinary medical risks for persons who may contract the coronavirus.

The defendant also appears presently to face a significant probability of infection. Published reports suggest that the outbreak at Milan is a cause for concern, with 30 active cases among inmates, in addition to the past widespread incidence of the disease, which caused several inmate deaths. Moreover, the government's position that the defendant is at little or no risk is not at all reassuring, considering its past apparent failure to hold the disease at bay.

The defendant has made an adequate showing both of extraordinary risk and of a significant present probability of infection to satisfy the first element of the *Jones* analysis.

C.

Despite the defendant's satisfactory showing of extraordinary medical risk, early release is not justified in this case because the relevant section 3553(a) factors weigh heavily against discharging him into the community.

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument, however, is a dead letter after the Sixth Circuit's decision in *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons

may be allowed.  *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant").  And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct."  *Id.* § (2)(A), (C).  These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

The defendant's crimes in this case were extremely serious, involving the distribution of staggering amounts of powder and crack cocaine, accompanied by illegal possession of weapons and the use of telecommunication facilities to further a drug distribution enterprise of a nearly industrial scale.  Although the defendant apparently has been compliant while in custody for the past decade, his history of prior serious drug offenses and commission of further crimes while under supervision suggests a significant likelihood that no conditions of supervision would be adequate to mitigate the risk to the community if he is released now.

Moreover, the Court determined at the time of sentencing that the 20-year term in this case was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a).  One of those goals — protection of the public — was paramount in the Court's consideration.

The defendant has done well enough in a prison setting and appears to have avoided any citations for serious misconduct.  However, commendable though Williams's conduct in prison has been, it does not alter the historical fact that the Court imposed a sentence that was not greater than necessary to achieve congressional goals.  Reducing the defendant's sentence to less than half of the original term certainly would not promote respect for the law or provide a just punishment for the defendant's crimes.  Nor would it serve as a significant deterrent to others; to the contrary it severely would undermine the goals of both specific and general deterrence, which is of

particular concern with a defendant who has demonstrated his willingness to defy conditions of supervision in the past.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, and those factors foreclose relief.  On similar facts, notwithstanding an inmate's demonstration of elevated medical risk, this and other federal courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes and had served less than half of their custodial terms.  *E.g.*, *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *4 (E.D. Mich. Dec. 9, 2020); *United States v. Douglas*, No. 16-20436, 2020 WL 7225773, at *4 (E.D. Mich. Dec. 7, 2020); *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020); *United States v. Myers*, No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020).  There are no facts apparent in this record suggesting that a different outcome is warranted here.

III.

Williams has exhausted his administrative remedies.  However, he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 564, 567) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  January 26, 2021